No. 2713

Second Circuit

---

SNYDER v. TARVER

---

(Dec. 11, 1926. Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Appeal—Par. 625.**

The finding of fact by the district judge will not be disturbed on appeal unless manifestly erroneous.

4 La. App. Index, verbo Appeal.

Appeal from the Fifth Judicial District Court of Louisiana, parish of Franklin. Hon. John R. McIntosh, Judge.

Action by C. L. Snyder against L. W. Tarver.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

George T. Edwards, of Winnsboro, attorney for plaintiff, appellee.

S. R. Holstein, of Winnsboro, attorney for defendant, appellant.

STATEMENT OF THE CASE.

REYNOLDS, J. This is a suit to recover $1025.00 with 8 per cent per annum interest thereon from April 5, 1920, until paid, and 10 per cent on the whole as attorney's fees on ten promissory notes given by the defendant to the plaintiff in payment for one Cletrac Cleveland Tractor manufactured by the Cleveland Tractor Company and sold by plaintiff to defendant and to foreclose a mortgage given by defendant to plaintiff on the machine to secure the payment of the debt.

Defendant denied liability on the ground that the tractor was sold to him under a guarantee that it was suitable for hauling logs and lumber and that after trial it proved not to be suitable for the purpose, and was returned to the plaintiff and received by him in satisfaction of the promissory notes.

It is further alleged that there was an accounting between plaintiff and defendant on October 1, 1921, at which time it was found that defendant was only owing plaintiff a balance of $485.19.

On these issues the case was tried and there was judgment for plaintiff for the amount sued for and defendant appealed.

OPINION.

Plaintiff swears positively that he did not give the defendant the guarantee

claimed. Defendant swears positively that plaintiff did. But this is not of importance for the reason that the question to be decided is whether or not the tractor was suitable for hauling logs and lumber.

Defendant's evidence tends to show that the tractor did not do the work for which he bought it; but plaintiff was entitled to have the tractor given a fair trial, and the only operator that defendant ever placed in charge of the tractor was himself and he testified, pages 79 and 80:

"Q. Mr. Tarver, have you—did you ever run or operate a tractor in hauling logs and heavy timbers before you undertook to operate this one?

"A. No, sir.

"Q. Have you ever made a study under anybody that knew anything about it at any time, in operating and handling tractors in hauling logs and heavy timbers?

"A. Before this?

"Q. Yes.

"A. No, sir."

Mr. C. H. Snyder, the only mechanic called to testify as to the capabilities of the tractor, testified, page 95:

"Q. With your knowledge of automobiles and automotive machines are you in position to tell this court just exactly what is the matter with that tractor and why it wouldn't run?

"A. Yes, sir.

"Q. Will you please state why that tractor wouldn't run?

"A. Well, I never had any trouble after I fixed it, did that work on the motor; I never had any trouble with the tractor pulling, as far as the pulling part of it was concerned; the trouble was that the transmission was dry, and there is where the tractor steers from, just like a Holt caterpillar tractor or any other caterpillar tractor; it steers through the transmission, and naturally you couldn't steer it; but as far as the pulling of it is concerned, right now you could hook it onto two eight-wheel log wagons loaded and pull them anywhere you want to; I wouldn't hesitate a minute in hooking onto any ordinary load of twelve horse-power drawbar tractor could pull right now and it will pull it; it will pull at least fifteen; the steering was one of the main troubles, and then the bearings under the truck were dry and no grease in them; as far as the pulling of it was concerned, it will pull as much now as it did when it was new.

"Q. Then, according to your knowledge, the defect that had developed in the tractor has been a result of improper operating and improper oiling?

"A. Absolutely. Mostly improper greasing.

"Q. Greasing?

"A. The oil was kept in the motor sufficient, I think.

"Q. Mr. Snyder, did you ever attend a school of engineering?

"A. Yes, sir; Georgia School of Technical Knowledge."

Scott Frazier testified as to this particular make of tractor, pages 85, 86 and 87:

"Q. Were you formerly employed by Mr. C. L. Snyder?

"A. Yes, sir.

"Q. When you were so employed, did you have occasion to observe the operation of the Cleveland Tractors, called 'Cletrac'?

"A. Yes, sir. I used one about four months, last fall and winter.

"Q. In what line of work was it used?

"A. Hauling logs; dragging and loading logs.

"Q. Did it operate successfully?

"A. I have never had anything or heard of anything that would beat it. I have loaded logs there that a team would have failed with, ordinary team.

"Q. Did you handle any cypress with it in the cypress brake?

"A. Yes, sir; right in the difficult places, among the cypress knees, everywhere we used it there four or five months successfully.

"Q. Who was driving the tractor?

"A. A darkey.

\* \* \*

"Q. Mr. Scott, what size logs were you able to handle? With that tractor?

"A. Well, any size I got hold of in the cypress brake; I loaded one twenty-four foot, thirty-two inches at the top,

with it; cypress log. I never hooked onto anything but what we pulled it.

"Q. Did you ever see it pulling wagon loads of lumber?

"A. Yes, sir; I seen Mr. Snyder when he was operating a little mill up there pull two wagon loads of lumber down here to town with it."

This evidence convinces us that defendant has failed to establish his contention that the tractor would not do the work for which he bought it had its operation been placed in the hands of an experienced tractor operator.

Defendant contends that the tractor was returned to plaintiff and that plaintiff accepted it and agreed to cancel the notes defendant gave him in payment for it.

Plaintiff positively denies that he accepted or agreed to accept the tractor back or that he agreed to cancel the notes and the evidence abundantly shows that the tractor was never returned to plaintiff.

It was delivered to plaintiff's son, who operated a garage and automobile repair shop, and it was delivered to him not for plaintiff but for the purpose of being repaired, and he did repair it and still holds it as security for the cost of the repairs.

Defendant contends that he had an accounting and settlement with plaintiff on October 1, 1921, and that it only left a balance of $485.19 owing by him to plaintiff.

However the written receipt given by plaintiff to defendant on that occasion on its face shows that the accounting and settlement was only intended to embrace defendant's "cotton account" to plaintiff, and the defendant himself testified in regard thereto as follows, page 82:

"Q. Now, then, the amount of these two notes was the amount that you—he had you charged with an open account?

"A. On account, yes.

"Q. And it did not embrace the amount of the tractor notes which you did not consider you owed him?

"A. Well, he agreed that I when we settle on this; this was the open account; I wasn't supposed to owe him the tractor notes, because he agreed to give the tractor notes back; if I had owed him the tractor notes I guess he would have wanted a mortgage for them, which if I owed it, I would have given him a mortgage covering everything to make satisfaction.

"Q. Well, if you will just answer my question that I asked you, to make the position, your position clear, all I want to know is if the amount figured in the face of these two notes embraced the amount of the eleven—of the thousand and twenty-five dollar tractor notes or just the open account?

"A. That was for an open account."

This testimony makes it perfectly clear that defendant does not contend that at the time the receipt was given him it was intended to include the tractor notes in the same; his contention is that they had been settled for by the return of the tractor to plaintiff; but, as stated above, we are convinced that plaintiff never received back or agreed to receive back the tractor or to release defendant from his liability on the notes sued on in this case.

The trial judge who heard the witnesses testify and observed their demeanor on the witness stand gave judgment in favor of the plaintiff, and the evidence satisfies us that his finding is correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.